PEOPLE *v.* LEE.

1. FALSE PRETENSES—CRIMINAL STATUTES STRICTLY CONSTRUED.
    In prosecution for obtaining money under false pretenses in
    violation of 3 Comp. Laws 1929, § 16916, said statute, like
    other criminal statutes, is to be strictly construed in favor
    of defendant.

2. SAME—NECESSARY ELEMENTS OF CRIME.
    In order to warrant conviction of false pretenses in violation of
    3 Comp. Laws 1929, § 16916, three things must concur: in-
    tent to defraud, false pretenses made, and fraud accomplished.

3. LIFE ESTATES—INCUMBRANCES.
    Unrecorded writing, which, coupled with holder's possession,
    amounts to life lease, constitutes incumbrance on property.

4. FALSE PRETENSES—MISREPRESENTATIONS—MORTGAGES—LIFE ES-
    TATES.
    Where defendant, giving bank real estate mortgage to secure
    loan, represented that mortgaged property was unincumbered,
    whereas, in fact, his father had writing which, coupled with
    possession, amounted to life lease, defendant was guilty of
    false pretenses in violation of 3 Comp. Laws 1929, § 16916.
    McDONALD and WIEST, JJ., dissenting.

Appeal from Recorder's Court of Detroit; Bren-
nan (John V.), J. Submitted October 15, 1931.
(Docket No. 209, Calendar No. 35,551.) Decided
June 23, 1932.

Wirt Lee was convicted of obtaining money by
false pretenses. Affirmed.

*William S. McDowell,* for appellant.

*Paul W. Voorhies,* Attorney General, *Harry S.
Toy,* Prosecuting Attorney, and *Sherman F. Kelly*
and *Edmund E. Shepherd,* Assistants Prosecuting
Attorney, for the people.

On intent to defraud as element of false pretenses, see annota-
tion in L. R. A. 1916D, 270.

Potter, J. Defendant was arrested, informed against, and convicted of a violation of 3 Comp. Laws 1915, § 15320 (3 Comp. Laws 1929, § 16916). This, like all other criminal statutes, is to be strictly construed in favor of defendant. Its object is to punish cheats. In all cases of this kind at least three things must concur. The intent to defraud, the false pretenses made, and the fraud accomplished. *People* v. *Wakely,* 62 Mich. 297. In this case defendant owed the bank $7,000, for which he had given his note. He owed other bills to creditors. The bank wanted security for its loan. Defendant was unwilling to give the bank preferential treatment as a creditor; to secure its loan when other creditors would have no security. He wanted to pay or secure all creditors without preference or priority. Finally, defendant and the bank agreed that the bank would advance to defendant sufficient to pay his other outstanding indebtedness. The notes of defendant were to be signed, not only by himself, but by his wife, and were to be indorsed by third parties. Defendant and his wife were to give a real estate mortgage upon defendant's interest in real estate to secure the payment of $8,200. Defendant represented there was nothing in the title to the real estate which in any way prevented his mortgaging his interest in the same. He told the officers of the bank with whom he negotiated the loan that his father had possession of the real estate mortgaged. After the mortgage was given, defendant made default in the payments thereon, the bank foreclosed the mortgage, and, upon the sale in pursuance of such foreclosure, purchased defendant's interest in the real estate for $7,500, and took a decree for deficiency against the makers and indorsers of the notes secured by the mortgage. It was unable to

realize upon the executions issued on the deficiency decree, and the bank instituted this criminal prosecution. Defendant contends there is no evidence the bank or its officers, in making the additional loan, were in anywise deceived; that he had a right to mortgage his interest in the land; and the bank, having knowledge of his father's occupancy of the land, were bound by that knowledge to ascertain, at their peril, the extent of the father's rights; that the representations made by defendant were in the nature of a written warranty and cannot be made the basis of false pretenses; that the court has always recognized a difference between a breach of warranty and false representations and pretenses, even in civil cases, and that the criminal law recognizes and follows the rule laid down in civil cases and therefore the prosecution will not lie.

No inquiry was made by the bank of the father as to his rights in the premises. Inquiry was made of defendant as to his father's rights. Defendant was asked if the land was incumbered, and says he answered "No." The father had a writing, not recorded, which, coupled with his possession, amounted to a life lease of the premises mortgaged. This constituted an incumbrance. There was sufficient evidence to carry the case to the jury. Its weight and sufficiency was for their consideration. The charge of the trial court fully covered the issues involved, and fairly submitted them to the jury. We find no reversible error. Conviction affirmed.

CLARK, C. J., and SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). I find ignorance on the part of defendant, but no intent to defraud. I think the conviction should be reversed.

Defendant owed the bank $7,000 and other parties $3,000. The bank pressed for security. He owned an undivided half interest in property; his brother owned the other half interest and their father held a writing giving him possession for life. Defendant would not give the bank preference, but was willing to mortgage his half interest if the bank would lend the $3,000 to pay the other creditors. The bank lent that sum in two items and took defendant's notes with a guaranty of payment by each creditor. Later the bank foreclosed the mortgage and bid the property in at the sum of $7,500 and later filed a bill for partition alleging title and that defendant's father was a mere trespasser. The record does not disclose what, if anything, was done in that case. Then the bank charged defendant with the crime of false pretenses in obtaining the $3,000 because he represented that his half interest in the property was unincumbered, when in truth it was incumbered by the life lease to his father.

At the time the mortgage was executed defendant informed the bank that his father occupied the property, but said nothing about his right to do so for life. One not skilled in law might honestly believe that the right of the father to occupy the property for life was not an incumbrance. Defendant, however, did not disclose the fact, but it is quite probable that had he done so it would not have led the bank to forego taking the mortgage for the old debt and to advance the $3,000 on the guaranty of two other persons to pay if defendant failed, and especially considering the fact that the life of the father was pretty well run, for he was 87 years of age.

McDonald, J., concurred with Wiest, J.